IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NUMBER 1:14-cr-90-TCB |
| WILLIAM KIMBRELL, | |
| Defendant. | |

**O R D E R**

This case comes before the Court on Magistrate Judge Baverman's Final Report and Recommendation (the "R&R") [49], which recommends denying Defendant William Kimbrell's motions to suppress evidence [12 (preliminary), 27 (amended)] and statements [13 (preliminary), 37 (amended)]. Kimbrell has filed objections to the R&R [52].

**I.    Factual Overview**

Kimbrell is charged with one count of receiving child pornography and one count of accessing child pornography with intent to view. The motions to suppress at issue arise from the execution of two search

warrants at Kimbrell's residence and statements made by Kimbrell to law enforcement officers before and during those searches.

### A.     The First Search of Kimbrell's Residence

The first search warrant was executed on March 13, 2014. That afternoon, Anthony Scott and Michael Ashley, both special agents with Homeland Security Investigations/Immigration and Customs Enforcement ("HSI/ICE"), went to the school in Winder, Georgia where Kimbrell was employed. They arrived after the school day had ended and approached Kimbrell in the parking lot. Although Kimbrell was accompanied by a colleague, the agents told him, in a conversational tone, that they were there pertaining to a matter about computers and asked him if he wanted to speak with them away from his coworker. Kimbrell asked his colleague to excuse him and spoke with the agents privately, for about twenty or thirty minutes. Kimbrell denied knowledge of any child pornography on any computer to which he had access, consented to the agents' search of his vehicle for computer devices, and volunteered that he had computer devices in his classroom and escorted the agents to retrieve them.

Scott and Ashley told Kimbrell that other agents were searching his residence pursuant to a search warrant. Kimbrell was not instructed to proceed to the residence, but when Scott arrived at the residence after speaking with Kimbrell at the school, Kimbrell was already there and was seated in the living room with his parents, who also lived there.

Shortly after Scott arrived, he asked Kimbrell if he would like to speak with him further, and when Kimbrell responded affirmatively, Scott asked if he would like to speak in a more private area or remain where he was. Kimbrell opted for a more private location and led Scott and two other law enforcement officers to his parents' bedroom. Kimbrell sat on the right side of the bed, one of the agents stood near that side of the bed, and Scott and the other agent were on the left side of the bedroom. The door to the bedroom was closed.

The conversation that ensued lasted fewer than eighty minutes, was partially recorded by the agents, and remained conversational and respectful in tone. Kimbrell denied viewing child pornography purposefully, but he admitted that while using a peer-to-peer ("P2P")

file-sharing network to download music while in college, he received and then deleted "a couple hundred" child-pornography images and videos contained in a zip file. He further stated that if he did inadvertently download files containing child pornography, he would delete them as soon as he realized what they were, which could explain any "sporadic" deleted files other than the one zip file he mentioned earlier. During this initial part of the conversation, which lasted about forty-two minutes, Kimbrell accused the agents of trying to get him to incriminate himself for something he had not done and otherwise generally maintained his innocence. Believing that he was not making any headway in light of Kimbrell's denials, Scott turned off the recorder, believing the interview was complete.

    The conversation between Kimbrell and law enforcement resumed after Detective Woodall with the Liberty County Sheriff's Office told Scott that their search had revealed "some artifacts"—i.e., bits of data stored on a computer using P2P software—on computers at the residence. Scott left the room for approximately two minutes, and when he returned, Woodall was questioning Kimbrell about what had been

found on the computers, so Scott resumed recording the interview. Kimbrell admitted that he had been curious and his relatively small physical size had fueled that curiosity, but he stated that "it wasn't a sustained thing." At this point, Woodall left the room and Scott resumed the questioning after instructing Kimbrell to "be straight" with him. Kimbrell maintained that his initial downloads had been inadvertent but admitted that he downloaded "a couple hundred" images, looked at them for approximately one minute, recognized them to be child pornography, and deleted them. Kimbrell also described the search terms he used to find the images, and he claimed to have downloaded the child pornography in an effort to view or download adult pornography.

Ultimately, the first search of Kimbrell's residence did not reveal any files containing child pornography, the agents did not seize any computer devices from the home, and Kimbrell was not arrested.

### B.   The Second Search of Kimbrell's Residence

On March 14, 2014, the day after the execution of the first warrant, a second search warrant was applied for and issued. Scott

provided the supporting affidavit, just as he had for the first search warrant. In it he stated, among other things, that the first warrant had been executed; that a preview of one computer at the residence showed that child pornography images had been accessed but deleted; that Kimbrell "stated he had previously downloaded approximately 200 files containing child pornography, but the agent conducting the preview could find only 23 file names"; and that he believed probable cause existed for the warrant to issue. [27-2].

The second search warrant was executed on March 14, 2014 (the same day it was issued), and agents seized all the computers and storage devices located within Kimbrell's residence, including two laptop computers and two hard disk drives.

### C. Kimbrell's Motions and the R&R

On March 18, 2014, a grand jury returned an indictment [1] charging Kimbrell with one count of accessing child pornography with intent to view. On April 22, Kimbrell was charged in a superseding indictment with one count of accessing child pornography with intent to review and one count of receiving child pornography.

Kimbrell moved to suppress the statements he made before and during the execution of the first search warrant, arguing that he was in custody and entitled to be advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). He also filed a motion to suppress the evidence seized in connection with the execution of the second search warrant, which Kimbrell contends was unlawful because Scott's affidavit shows a reckless disregard for the truth and omits material information.

The R&R recommends that Kimbrell's motions be denied. Kimbrell argues, with respect to his motion to suppress evidence, that he is entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and that the second search warrant was not supported by probable cause. As to his motion to suppress statements, he reiterates his belief that he was entitled to *Miranda* warnings in connection with the questioning that took place before and during the execution of the first search warrant.

## II. Legal Standard on Review of a Magistrate Judge's R&R

A district judge has a duty to conduct a "careful and complete" review of a magistrate judge's R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. Unit B 1982)).[1] Where a party objects to an R&R, a district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district judge must "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990). Those portions of the R&R to which no objection is made need only be reviewed for clear error. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006).[2]

---

[1] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by the Unit B panel of the former Fifth Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982); *see also United States v. Schultz*, 565 F.3d 1353, 1361 n.4 (11th Cir. 2009) (discussing continuing validity of *Nettles*).

[2] *Macort* addressed only the standard of review applied to a magistrate judge's factual findings, but the Supreme Court has held that there is no reason for a district court to apply a different standard of review to a magistrate judge's legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Thus, district courts in this circuit have routinely applied a clear-error standard to both. *See Tauber v.*

"Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles*, 677 F.2d at 410 n.8. "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Id.* at 410.

After conducting a complete and careful review of the R&R, the district judge may accept, reject or modify the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *Williams*, 681 F.2d at 732. The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1)(C). The district judge also has discretion to decline to consider arguments that were not raised before the magistrate judge. *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). Indeed, a contrary rule "would effectively nullify the magistrate judge's

---

*Barnhart*, 438 F. Supp. 2d 1366, 1373-74 (N.D. Ga. 2006) (collecting cases). By contrast, the standard of review on appeal distinguishes between factual findings and legal conclusions. *See Monroe v. Thigpen*, 932 F.2d 1437, 1440 (11th Cir. 1991) (when magistrate judge's findings of fact are adopted by district court without objection, they are reviewed on appeal under plain-error standard, but questions of law remain subject to de novo review).

consideration of the matter and would not help to relieve the workload of the district court." *Id.* (quoting *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)).

## III. Analysis

The Court has carefully reviewed the R&R and Kimbrell's objections thereto. Having done so, the Court finds that Magistrate Judge Baverman's factual and legal conclusions were correct and that Kimbrell's objections are without merit.

First, Judge Baverman correctly concluded that no *Franks* hearing is necessary on the record before the Court. When a defendant brings a motion to suppress based on alleged misrepresentations or omissions in a search warrant affidavit, he is entitled to an evidentiary hearing under certain circumstances. *Franks*, 438 U.S. at 171-72. If, however, the allegedly false material in the affidavit is disregarded and the remainder of the warrant is sufficient to support a finding of probable cause, no hearing is required. *Id.* at 172; *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009).

Here, the affidavit references Kimbrell's admission to having downloaded 200 images of child pornography. Under the totality of the circumstances present in this case, this admission supports a finding of probable cause. *See generally United States v. Frank*, No. 09-cr-20075, 2009 WL 2430909, at *6 (S.D. Fla. Aug. 7, 2009) (where it was undisputed that the defendant had "allegedly transmitted video and picture images from his home computer," probable cause existed to justify search of that computer six months later); *United States v. Schmekel*, 416 F. App'x 625, 626 (9th Cir. 2011) (defendant's "admitted interest in child pornography" supported a finding of probable cause for warrant to search residence); *United States v. Peden*, No. CR. 06-0300-WBS, 2007 WL 2318977, at *11 (E.D. Cal. Aug. 13, 2007) (search warrant affidavit referencing the defendant's admission that he downloaded images of child pornography supported finding of probable cause). This is particularly true in light of the affidavit's explanation that data from deleted files often remains on a user's computer and can generally be recovered by forensic tools for some period of time after their attempted manual deletion. Because the affidavit supported a

finding of probable cause separate and apart from the challenged omissions and misrepresentations, no *Franks* hearing is required and the validity of the search warrant turns on whether Kimbrell's statements referred to in the warrant were validly obtained.

In determining whether a confession is voluntary under the totality of the circumstances, the Court looks to factors including the defendant's education and intelligence, the length of the questioning and the detention, whether law enforcement used coercive interrogation techniques, and whether the defendant was advised of his constitutional rights. *United States v. Rouco*, 765 F.2d 983, 993 (11th Cir. 1985); *United States v. Bernal-Benitez*, 594 F.3d 1303, 1319 (11th Cir. 2010). Kimbrell raises no challenge to Judge Baverman's analysis of the first three of these factors, and the Court agrees with them. [49], pp.40-41 n.17. The only argument raised by Kimbrell is that his confession was involuntary because he was in custody while being questioned and therefore entitled to *Miranda* warnings. The Court disagrees.

As Judge Baverman correctly observed, the inquiry into whether an individual was effectively in custody during questioning is an objective one: "[t]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). The R&R correctly sets forth the factors relevant to this inquiry, and Kimbrell does not challenge any of the specific applications of those factors to his case. [49], pp.30-31 (looking to, among other things, the location and duration of the questioning, officers' use of weapons, whether the suspect was touched, and the presence of physical restraints to determine whether an individual was in custody).

After *de novo* review, the Court finds no error in the R&R's conclusion that Kimbrell failed to show that he was in custody when he was questioned in his parents' bedroom. It was a familiar and comfortable setting, and one that Kimbrell chose; firearms were not brandished by the agents; the door to the bedroom was closed but not locked or barricaded; the tone of the conversation remained congenial; and there is nothing to suggest that Kimbrell was denied permission to

13

move around the house. Judge Baverman also correctly found that the eighty-minute duration of the interview "was not so lengthy as to convert the encounter into a custodial one." [49], p.36 (citing, *inter alia*, *United States v. McDowell*, 250 F.3d 1354, 1363 (11th Cir. 2001) (interrogation that lasted "approximately four hours" was non-custodial); *United States v. Muegge*, 225 F.3d 1267, 1269 (11th Cir. 2000) ("interview lasting approximately two and one half hours" was non-custodial)).

The R&R correctly found that Kimbrell's statements to law enforcement were voluntary. As a result, the second search warrant was not defective for its reliance on those statements, and the Court finds no error in the R&R's recommendation that Kimbrell's motions to suppress be denied.

### IV. Conclusion

For the foregoing reasons, the Court adopts as its Order the R&R [49] and overrules Kimbrell's objections thereto [52]. Kimbrell's motions to suppress evidence [12, 27] are denied, as are his motions to suppress statements [13, 37].

IT IS SO ORDERED this 4th day of August, 2015.

_____
Timothy C. Batten, Sr.
United States District Judge